POLICH TRADING CO., Respondent, v.
BILLINGS HUDSON TERRAPLANE CO., Appellant.

(No. 8378.)

(Submitted April 9, 1943.   Decided May 15, 1943.)

[137 Pac. (2d) 661.]

*Messrs. T. H. Burke* and *Claude A. Johnson,* for appellant, submitted a brief; *Mr. Burke* argued the cause orally.

*Messrs H. M. Gullickson* and *M. J. Lamb,* for respondent, submitted a brief; *Mr. Lamb* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

The Polich Trading Company of Roundup, Montana, brought suit against the Billings Hudson Terraplane Company of Billings, Montana, asking for rescission of a contract and a return to it of the value of certain articles it had parted with under the contract. The District Court allowed the rescission and awarded the sum of $1,605.75 as the value of the articles.

The record discloses the following to be the facts upon which the controversy arose:

In the fall of 1934, M. T. Polich, who was manager and the owner of the Polich Trading Company, entered into six separate contracts for the purchase of certain new automobiles from the Billings company. Each contract called for the delivery of a 1935 model Hudson or Terraplane automobile. The type or style of the automobile to be delivered under each contract was fixed with the exception of the buyer's option in some of the contracts to choose body and wheel base types. In four of the contracts the delivery date was to be at "buyer's option" and in the other two at "buyer's option when possible." Each contract specified certain articles of personal property of a designated trade-in value to be part payment of the purchase price. In one contract it was stipulated that the value of the articles traded in would be of a certain value ($525) if used on a DeLuxe model and only $475 if used on a standard model. On the back of the purchase order appear the following provisions:

"The following is part of agreement between purchaser and dealer entered into on the other side of this form:

"I agree to pay balance of the purchase price on delivery of car or to give such security for payment as you may require. If the balance of the full purchase price is not settled by me within thirty days after notice that said motor car is ready for delivery you may cancel this order and retain all payments paid by me as the amount of damage presumed sustained by you for my breach of contract.

"If said motor car is not delivered within thirty days after specified date, unless subject to delays beyond your control, cash deposit shall be returned together with used car deposit as part payment, if any, or proceeds thereof if sold less cost of repairing said used car and 20% of sale price for handling, and you shall not be liable for damages for non-delivery.

"The title to any right of possession of said motor car shall remain in you until the full purchase price is paid.

"No verbal agreement is binding on you. All terms and conditions of this sale are expressed in this agreement. Any promises or understandings not herein specified in writing are hereby expressly waived.

"This order is not transferrable and shall not be valid until accepted by you or your authorized representative."

After making the contracts and on December 20, 1934, the buyer, M. T. Polich, assigned the contracts to Carl N. Thompson, who in turn pledged the contracts to the Miners and Merchants Bank of Roundup, Montana, as collateral security for notes issued by the Billings company, and in answer to an inquiry from the bank, the Billings company on January 28, 1935, wrote as follows: "* * * We are signing up Mr. Thompson as a dealer at Roundup, and we will accept any assignments made to you on sales orders made out to Matt Polich or Polich Trading Co. and assigned to Mr. Thompson. These orders are good at any time and we only ask sufficient time to order special models when they are required."

No one attempted to take advantage of these credits during the year 1935, and in September, 1936, the bank sold the contracts to the Polich Trading Company, which brought this suit in February, 1938.

The theory of the complaint is that the plaintiff is entitled to rescission under section 7565, Revised Codes, subdivision 4. That section provides that:

"A party to a contract may rescind the same in the following cases only:

"* * * 4. If such consideration, before it is rendered to him, fails in a material respect, from any cause".

The plaintiff contends emphatically that this is not an action for breach of contract by reason of non-performance, but is one for rescission for failure of consideration. The failure of consideration relied on in this case is the failure to deliver the car. We shall not consider the question which immediately suggests itself, whether such failure of performance would constitute a failure of consideration within that section so as to entitle plaintiff to rescind. In our consideration of the case we shall assume, without deciding, that the question is not present.

Since the contracts provide that the delivery is to be at the buyer's option, it is important to examine the evidence supporting plaintiff's allegation that it demanded delivery of the cars on and after the 12th day of September, 1936.

The trial court made the following finding in regard to the demand: "The questions presented by this cause and most ably argued in the briefs of opposing counsel are by no means free from difficulty. The court has given them lengthy and careful consideration. Defendant argues that plaintiff is guilty of laches; that by delay plaintiff made it impossible for defendant to deliver the new automobiles called for by the six car-purchase contracts; that defendant in all respects did everything that it was called upon to do under said contracts and stood ready to complete performance by delivery of the new automobiles until plaintiff's laches made such performance impossible. In fact even at the time of the trial by its amended answer defendant held itself out as being ready, willing and able to furnish plaintiff with new 1939 Hudson sedans comparable to the automobiles described in plaintiff's exhibits 1-6, under the same terms and conditions set forth in said six car-purchase contracts. As remarked hereinbefore defendant also testified that demand for such delivery was never made by plaintiff. Plaintiff to the contrary testified that it did make such demand. The evidence on this point by both plain-

450

tiff and defendant is indefinite and unsatisfactory and is so uncertain that the court has concluded that there was neither a definite demand by plaintiff for delivery of said new cars before it was impossible for defendant to make delivery, nor a step taken by defendant to cancel said contracts and restore to plaintiff the personal property traded, in as part payment or its fair market value less deductions provided for in such event by the printed terms of said contracts or purchase orders."

From an examination of the testimony we must conclude, as did the trial court, that no demand for delivery of the cars was made until it was impossible for the defendant to make delivery. This being the fact we are presented with the question of whether the plaintiff may rescind a contract after he has so delayed consummation that it was impossible for the defendant to make delivery.

The general rule is stated in Black on Rescission and Cancellation, 2d Ed., section 196, entitled "Non-performance as Ground of Rescission." It is there stated: "But aside from questions of fraud, it is a general rule that if a contract is entire and remains executory in whole or in part and one party fails to perform what it is his duty to do under the contract, *and the other party is not in default,* the latter may rescind the contract."

It is noted that the right to rescind is dependent, among other things, on the freedom from fault of the party seeking rescission. We think that our statute, section 7565, contemplates this requirement. This statute was adopted from California (Cal. Civ. Code, sec. 1689), and in the case of *Tuohy* v. *Moore,* 133 Cal. 516, 65 Pac. 1107, the court in dealing with a similar situation denied the right of rescission and made the following comment: "It would be inequitable to allow plaintiff to rescind under the facts of this case, *all of which point to his own delinquency, rather than that of defendant."* (See, also, Black on Rescission and Cancellation, 2d Ed., Sec. 208.)

The facts of the present case show that the plaintiff, or its

assigns, had the option to take full advantage of this contract. No one did so. The defendant on the other hand, as the District Court found, was willing to allow the plaintiff to take advantage of the contract at the time the suit was brought. It offered 1939 model cars with a justified readjustment of the value of the articles traded in. The plaintiff, however, chose to refuse and insist that the contract be rescinded because of the fault of the defendant. We think a reasonable intendment of the contract to be that while the plaintiff had the option as to the date of delivery yet he must exercise that option while the defendant had an opportunity to perform. See Section 7548, Revised Codes, which provides as follows: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed. If the act is in its nature capable of being done instantly—as, for example, if it consists in the payment of money only—it must be performed immediately upon the thing to be done being exactly ascertained."

As in the *Tuohy Case,* supra, we hold that the plaintiff cannot make his own neglect the basis of an action for rescission. Consequently since the plaintiff is not entitled to rescission, he is not, in this action, entitled to any of the other relief prayed for.

The judgment is reversed and remanded with directions to dismiss the action.

MR. CHIEF JUSTICE JOHNSON, and ASSOCIATE JUSTICES ANDERSON, MORRIS and ADAIR concur.

Rehearing denied June 8, 1943.